## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

NEW MEXICO DEPARTMENT OF GAME
AND FISH,

      Petitioner,

v.

UNITED STATES DEPARTMENT OF THE
INTERIOR; SALLY JEWELL, in her official
capacity as SECRETARY OF THE UNITED
STATES DEPARTMENT OF THE
INTERIOR; UNITED STATES FISH AND
WILDLIFE SERVICE; DANIEL M. ASHE,
in his official capacity as DIRECTOR OF
THE UNITED STATES FISH AND
WILDLIFE SERVICE, DR. BENJAMIN N.
TUGGLE, in his official capacity as
SOUTHWEST REGIONAL DIRECTOR
FOR THE UNITED STATES FISH AND
WILDLIFE SERVICE,

      Federal Respondents.

Case No. 2:16-cv-00462

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

### INTRODUCTION

1.      Plaintiff, the New Mexico Department of Game and Fish ("Department"), brings

this action against the United States Department of the Interior, Secretary Jewell, the United

States Fish and Wildlife Service ("Service"), Director Daniel M. Ashe, and Regional Director

Dr. Benjamin N. Tuggle (collectively, "Defendants"), seeking declaratory and injunctive relief to

remedy Defendants' past, ongoing, and imminent violations of New Mexico's wildlife statutes

and federal law, including the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.

2.     In 1982, the Service completed a recovery plan for the Mexican gray wolf (the "1982 Recovery Plan"), which was first listed under the Federal Endangered Species Act ("ESA") as endangered in 1976.  The 1982 Recovery Plan included a recovery objective for the species.

3.     In 1998, Defendants published a final rule for the purpose of establishing a nonessential experimental population of Mexican gray wolf Defendants promulgated the rule to achieve the recovery objective set out in the 1982 Recovery Plan.

4.     That same year, Defendants initiated an effort to reintroduce the Mexican gray wolf into the wild in the States of Arizona and New Mexico.  Over the intervening period, the Service introduced many dozens of captive-bred wolves in Arizona and New Mexico.  Today, by the Service's account, there are a minimum of 97 Mexican wolves in the wild in the United States.

5.     New Mexico law makes it unlawful to import Mexican gray wolves into the State without a permit from the Department.  19.35.7.8 NMAC.  New Mexico law also makes it unlawful to release Mexican gray wolves in the State without a permit from the Department.  19.31.10.11 NMAC.

6.     Furthermore, federal law, codified in the Code of Federal Regulations requires Defendants, "[i]n carrying out research programs involving the taking or possession of fish and wildlife or programs involving reintroduction of fish and wildlife," to "consult with the States and comply with State permit requirements. . . , except in instances where the Secretary of the Interior determines that such compliance would prevent him from carrying out his statutory responsibilities."  43 C.F.R. § 24.4(i)(5)(i).

7.     Until now, Defendants obtained approval from the Department prior to every release within the State's borders.  But on or about April 24, 2016, for the first time in the history

of the reintroduction effort, Defendants released two wolves in New Mexico without obtaining Department approval, and potentially in violation of the express terms of previously issued Department permits.  Further, on information and belief, the Department alleges that Defendants are poised to release an unknown number of additional wolves within the State in violation of State and federal law, though the Department is not privy to when, where, and how many.

8.    Defendants' actions have a direct and significant impact on the State of New Mexico, the Department, and its authority to enforce State law.  Further, the unpermitted release of additional wolves within the State could significantly impact the Department's conservation efforts with respect to species protected under New Mexico law, including elk, deer, and antelope, in addition to the potential for other deleterious effects amounting to a public nuisance. Thus, as there is no plain, speedy, or adequate remedy at law, the Department will be irreparably harmed if an injunction does not issue enjoining the Defendants from continuing to violate State and/or Federal law.

## JURISDICTION AND VENUE

9.    The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (civil actions arising under laws of the United States), 5 U.S.C. § 703 (actions arising under the APA), and 28 U.S.C. § 1367 (supplemental jurisdiction).

10.    An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201.  As such, this Court may grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

11.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) (suit may be brought in the District where a substantial part of the activities that are the subject of the action are situated).

**PARTIES**

12.     Plaintiff the New Mexico Department of Game and Fish is a department within the Executive Branch of the State of New Mexico.  The Department is charged by statute with the stewardship of wildlife and fish resident in the State.  In this capacity, the Department enforces both statutory requirements enacted by the legislature and regulations enacted by the State Game Commission.

13.     Defendant United States Department of the Interior is a department of the United States Government, established by statute.

14.     Defendant Sally Jewell is the Secretary of the Department of the Interior.

15.     Defendant United States Fish and Wildlife Service is a department of the United States Government, established by statute.

16.     Defendant Dan Ashe is the Director of the United States Fish and Wildlife Service.

17.     Defendant Dr. Benjamin N. Tuggle is the Southwest Regional Director of the United States Fish and Wildlife Service.  The Service's Southwest region includes the State of New Mexico.

**GENERAL ALLEGATIONS**

18.     The Service listed the Mexican gray wolf subspecies (*Canis lupus baileyi*) under the ESA as endangered on April 28, 1976.  41 Fed. Reg. 17736 (Apr. 28, 1976).  The entire gray wolf species (*Canis lupus*) in North America south of Canada, except in Minnesota, was listed as endangered under the ESA on March 9, 1978.  43 Fed. Reg. 9607 (Mar. 9, 1978).  Thus, the listing of the gray wolf in the contiguous United States and Mexico subsumed the separate listing of the Mexican gray wolf subspecies.  Subsequently, the Service proposed to delist the gray wolf

4

and to list the Mexican gray wolf as a subspecies; thereafter the Service promulgated a final rule listing the Mexican gray wolf as a subspecies.  80 Fed. Reg. 2488 (Jan. 16, 2015).

19.     A binational captive-breeding program between the United States and Mexico was established in the late 1970s, with the capture of the last remaining Mexican wolves in the wild.  The captive breeding program originated with seven founding wolves, and has grown to approximately 248 wolves in 55 facilities in the United States and Mexico.  The success of the captive breeding program has resulted in surplus animals, allowing Defendants to undertake efforts to reintroduce populations of the Mexican wolf into the wild.

20.     In 1982, the Service completed the 1982 Recovery Plan for the Mexican gray wolf.  Consistent with section 4(f)(1)(B)(ii) of the ESA, the 1982 Recovery Plan includes objective, measurable recovery criteria.  16 U.S.C. § 1533(f)(1)(B)(ii).  The 1982 Recovery Plan sets a goal to conserve and ensure the survival of the Mexican gray wolf of at least 100 Mexican wolves in the middle to high elevations of a 5,000 square mile area.

21.     On January 12, 1998, the Service published a final rule establishing the Mexican Wolf Experimental Population Area in central Arizona, New Mexico, and a small portion of northwestern Texas (the "1998 Final Rule").  63 Fed. Reg. 1752 (Jan. 12, 1998).  The purpose of the 1998 Final Rule, which seeks to establish a nonessential experimental population, is to achieve the recovery objective in the 1982 Recovery Plan.  *Id.* at 1753.

22.     In March 1998, pursuant to the 1998 Final Rule, Defendant began to release captive-bred Mexican wolves into the Blue Range Wolf Recovery Area of Arizona and New Mexico, which is within the Experimental Population Area.  Mexican wolves released into the Blue Range Wolf Recovery Area and their offspring are designated as a non-essential experimental population, which is intended to allow for greater management and flexibility to address wolf conflict situations such as livestock depredations and nuisance behavior.

23.     Under the Service's 1998 Final Rule, wolves born and raised in captivity could only be released in certain areas, and wolves were not allowed to establish territories on public lands wholly outside the Blue Range Wolf Recovery Area boundary.  If wolves did establish territories on public lands wholly outside the Blue Range Wolf Recovery Area boundary, the Service was required to retrieve the wolves.

24.     At the end of 2014, the Service estimated that 110 wolves inhabited the United States in central Arizona and New Mexico.  This exceeded the population criteria established by the Service in the 1982 Recovery Plan, which established a recovery goal of 100 Mexican wolves.  Furthermore, the Blue Range Wolf Recovery Area comprises 6,854 square miles, exceeding the 5,000 square mile habitat area established by the Service in the 1982 Recovery Plan

25.     On January 16, 2015, the Service issued a rule revising the 1998 Final Rule (the "2015 Final Experimental Population Rule").  The 2015 rule modified the geographic boundaries in which Mexican wolves could be managed, as well as the management regulations that govern the initial release, translocation, removal, and take of Mexican wolves.  It greatly increased the population and habitat criteria beyond the 1982 Recovery Plan and 1998 Final Rule.

26.     On April 1, 2015, the Department received the Service's application to import and release up to ten Mexican wolves in New Mexico, along with a request that the Department waive a condition of previously-issued permits prohibiting the release of offspring from certain imported Mexican wolves.

27.     On May 6, 2015, the Department received an additional application from the Service to release two additional Mexican wolves.

28.     On June 2, 2015, the Director of the Department denied both the April 1 and May 6 release applications and declined to waive the condition prohibiting the release of offspring.

29.     On August 27, 2015, after the Service appealed the Department Director's decision, the New Mexico State Game Commission heard argument on the Service's appeal, and requested that the Service provide additional data and evidence regarding Mexican wolf recovery efforts, recovery plans, historic range, habituations, and nuisance issues.

30.     On September 29, 2015, by unanimous vote of 7-0, the New Mexico State Game Commission denied the Service's appeal.

31.     In a letter dated October 14, 2015, the Service indicated its intent not to comply with the State of New Mexico's permitting requirements, and its intent to move forward with the reintroduction of Mexican wolves in New Mexico, notwithstanding that it does not have the requisite State permits to do so.

32.     On April 20, 2016, the Department provided the Defendants with a 60-day notice pursuant to 16 U.S.C. § 1540(g), identifying various violations of the ESA.  After the expiration of the 60-day period, the Department anticipates amending this complaint to include those claims.

## FIRST CLAIM FOR RELIEF

### (Failure To Obtain A State Importation Permit)

33.     The Department reasserts, realleges, and incorporates by reference each of paragraphs 1 through 32 above, as though fully set forth herein.

34.     Section 19.35.7.8 of the New Mexico Administrative Code states: "It shall be unlawful to import any live non-domesticated animal into New Mexico without first obtaining appropriate permit(s) issued by the Director except those animals identified within the species importation list group 1."

35.     Because the Mexican wolf is a live non-domesticated animal, and because the Mexican wolf is not identified within the species importation list group 1, the importation of Mexican wolves requires a permit from the Department.

36.     Although Defendants failed to obtain the required State importation permits from the Department, Defendants recently imported two Mexican wolves into the State.  Further, on information and belief, Defendants are poised to import an unknown number of additional Mexican wolves to the State, though the Department is not privy to when, where, and how many.

## SECOND CLAIM FOR RELIEF

### (Failure To Obtain A State Release Permit)

37.     The Department reasserts, realleges, and incorporates by reference each of paragraphs 1 through 36 above, as though fully set forth herein.

38.     Section 19.31.10.11 of the New Mexico Administrative Code states: "It shall be unlawful for any person or persons to release, intentionally or otherwise, or cause to be released in this state any mammal . . . , except domestic mammals . . . without first obtaining a permit from the department of game and fish."

39.     Section 19.35.7.19 of the New Mexico Administrative Code states: "No person shall release from captivity an imported animal into New Mexico except by obtaining a release permit from the director."

40.     Because the Mexican wolf is a non-domesticated mammal that was previously in captivity, the release of Mexican wolves requires a permit from the Department.

41.     Although Defendants failed to obtain the required State release permits from the Department, Defendants recently released two Mexican wolves in the State.  Further, on

information and belief, Defendants are poised to release an unknown number of additional Mexican wolves in the State, though the Department is not privy to when, where, and how many.

## THIRD CLAIM FOR RELIEF

### (Violation Of State Permit Conditions)

42.     The Department reasserts, realleges, and incorporates by reference each of paragraphs 1 through 41 above, as though fully set forth herein.

43.     Section 19.31.10.10.C of the New Mexico Administrative Code states: "It is unlawful for any person receiving any permit or license . . . to violate . . . any provision listed on the permit or license."

44.     Previously, the Department issued permits to Defendants authorizing the importation and release of certain Mexican wolves into the State.  A permit condition expressly prohibited the release of offspring from these imported Mexican wolves.

45.     In the Service's April 1, 2015 application, the Service requested that the Department waive this condition.  The Department declined to do so, and the New Mexico State Game Commission upheld this determination.  Thus, pursuant to the permit condition, Defendants could not release any offspring from the previously imported Mexican wolves.

46.     Based on information and belief, contrary to the express terms of the permit condition, Defendants released or are poised to release an unknown number of offspring from these Mexican wolves in the State, though the Department is not privy to when, where, and how many.

**FOURTH CLAIM FOR RELIEF**

**(Violation Of Apa – Failure To Comply With State Permitting Requirements)**

47.     The Department reasserts, realleges, and incorporates by reference each of paragraphs 1 through 46, above, as though fully set forth herein.

48.     The APA requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are, *inter alia*, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity, in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] without observance of procedure required by law . . . ."  5 U.S.C. § 706(2)(A)-(D).

49.     Under section 24.4(i)(5)(i) of Title 43 of the Code of Federal Regulations, the Service is required "[i]n carrying out research programs involving the taking or possession of fish and wildlife or programs involving reintroduction of fish and wildlife," to "consult with the States and comply with State permit requirements . . . , except in instances where the Secretary of the Interior determines that such compliance would prevent him from carrying out his statutory responsibilities."

50.     Because the Service did not obtain the necessary State permits, and because Defendants proceeded with a final agency action by importing and releasing Mexican wolves without the necessary State permits, they failed to act in a manner required by law, and/or acted in an arbitrary or capricious manner, in violation of the APA.

51.     Further, on information and belief, Defendants are poised to release an unknown number of additional Mexican wolves in the State without the necessary State permits, though the Department is not privy to when, where, and how many.

## FIFTH CLAIM FOR RELIEF

### (Violation Of APA – Arbitrary And Capricious Conduct)

52.    The Department reasserts, realleges, and incorporates by reference each of paragraphs 1 through 32 above, as though fully set forth herein.

53.    The APA requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are, *inter alia*, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity, in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] without observance of procedure required by law . . . ."  5 U.S.C. § 706(2)(A)-(D).

54.    The Defendants have long recognized development and implementation of the Mexican wolf experimental population rule as a component of recovery planning.  In 1982, the Service's Mexican Wolf Recovery Plan established a recovery objective of 100 Mexican wolves in the middle to high elevations of a 5,000 square mile area.  The 1998 Final Rule explicitly incorporated the 1982 Recovery Plan objective.  The Service began implementation of the 1998 Final Rule with the reintroduction of wolves in 1998 and has continued through 2015.  The Recovery Plan goal of 100 wolves in the wild in a 5,000 square mile habitat area was achieved at the end of 2014.

55.    Rather than establishing new scientifically based recovery criteria via an amended recovery plan, the Service is implementing the first year of the 2015 Final Experimental Population Rule – even though the Service has entered into a settlement agreement to issue a revised recovery plan for the Mexican wolf in late 2017.  The 2015 Final Experimental Population Rule defines an interim quota of 300 to 325 wolves.  80 Fed. Reg. at 2515-19.  The Service has authorized for 2016, *inter alia*, introduction of foster pups into up to five packs and

release of a captive pair and pups.  U.S. Fish and Wildlife Service, *Initial Release and Translocation Plan for 2016* (2016).

56.     The Service's implementation of the *Initial Release and Translocation Plan for 2016* represents a final agency action, and a departure from the sound policy of formulating and implementing Mexican wolf reintroduction efforts within the framework of its existing recovery plan, which has historically included captive breeding and reintroduction with experimental populations.

57.     By using the reintroduction planning process in the 2015 Final Experimental Population Rule to establish a new and very different recovery objective from that included in the 1982 Recovery Plan, then taking steps to implement that objective through the *Initial Release and Translocation Plan for 2016*, Defendants have taken steps to proceed with reintroductions that are inconsistent with the broader recovery planning program.  As such, reintroduction and implementation of the 2015 Final Experimental Population Rule, and specifically current actions under the *Initial Release and Translocation Plan for 2016*, is arbitrary and capricious, in violation of the APA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the New Mexico Department of Game and Fish, respectfully requests that the Court enter judgment in its favor and against Defendants, as follows:

1.      Adjudge and declare that Defendants have violated State law by failing to obtain the requisite importation and release permits from the Department prior to importing and releasing Mexican wolves into the State;

2.      Adjudge and declare that Defendants cannot import or release any Mexican wolves into the State without first obtaining the requisite importation and release permits from the Department;

3.      Enjoin Defendants from importing or releasing any Mexican wolves into the State without first obtaining the requisite importation and release permits from the Department;

4.      Adjudge and declare that Defendants have violated State law by importing and releasing Mexican wolf offspring in violation of prior Department permits;

5.      Adjudge and declare that Defendants cannot import and release any Mexican wolf offspring in violation of prior Department permits;

6.      Enjoin Defendants from importing and releasing any Mexican wolf offspring in violation of prior Department permits;

7.      Adjudge and declare that Defendants have violated the APA by failing to comply with State permit requirements;

8.      Issue an injunction requiring Defendants to capture and remove from the State any and all Mexican wolves that were imported and/or released in violation of State law;

9.      Adjudge and declare that Defendants have violated the APA by finalizing and implementing the *Initial Release and Translocation Plan for 2016*;

10.     Order the Service to vacate the *Initial Release and Translocation Plan for 2016*;

11.     Issue an injunction enjoining the Service from issuing an experimental population rule that is inconsistent with the operative recovery plan for the Mexican wolf;

12.     Retain jurisdiction of this matter until the Defendants have fulfilled their legal and Court-ordered obligations as set forth in this complaint;

13.     Grant such other further relief, including temporary, preliminary, and permanent injunctive relief, as the Court may deem just and proper.

Respectfully submitted,

DATE:  May 20, 2016

By:  /s/ Paul S. Weiland
Paul S. Weiland (CA Bar No. 237058)
*Admitted to Practice in D.N.M.*
NOSSAMAN LLP
18101 Von Karman Avenue, Suite 1800
Irvine, CA  92612
Telephone:  (949) 833-7800
Facsimile:  (949) 833-7878
Email:       pweiland@nossaman.com

Matthias L. Sayer (NM Bar No. 147231)
General Counsel
New Mexico Department of Game and Fish
1 Wildlife Way
Santa Fe, NM 87507
Telephone: (505) 476-8148
Email:       MatthiasL.Sayer@state.nm.us

*Attorneys for Plaintiffs*
New Mexico Department of Game and Fish