IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NEW MEXICO DEPARTMENT OF
GAME AND FISH,

        Petitioner,

v.                                                                                 No. CV 16-00462 WJ/KBM

UNITED STATES DEPARTMENT OF
THE INTERIOR, *et al*.,

        Respondents.

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDERS OF WILDLIFE *ET AL.*'S MOTION TO INTERVENE
ON BEHALF OF FEDERAL RESPONDENTS**

THIS MATTER comes before the Court upon Proposed Defendant-Intervenors Defenders of Wildlife, Center for Biological Diversity, WildEarth Guardians, and the New Mexico Wilderness Alliance's ("Conservation Groups") Motion to Intervene on Behalf of Federal Defendants (**Doc. 20**), filed June 6, 2016. Having reviewed and considered the written arguments and the applicable law, the Court finds that the Conservation Groups' Motion to Intervene is well-taken, and therefore **GRANTED**, as herein described.

**BACKGROUND**

The Conservation Groups filed this Motion (**Doc. 20**) to intervene as of right pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure, and alternatively to intervene permissively pursuant to Rule 24(b). Federal Respondents take no position on the Motion. Petitioner New Mexico Department of Game and Fish ("Petitioner" or "Department") opposes the Motion and filed a Response (**Doc. 35**) on June 17, 2016. The Conservation Groups filed a Reply (**Doc. 36**)

on June 28, 2016. As required by Federal Rule of Civil Procedure 24(c), the Conservation Groups have filed a proposed answer to Petitioner's Complaint.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 24(a)(2), the court must permit anyone to intervene who "(1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Thus, the Court considers: (1) whether the application is timely; (2) whether the conservation groups claim an interest relating to the agency action which is the subject of the litigation; (3) whether the conservation groups' interest may be impaired by the litigation; and (4) whether the conservation groups' interests are not adequately represented by the existing parties. *See WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010). Under Federal Rule of Civil Procedure 24(b), the court may permit anyone to permissively intervene who "is given a conditional right to intervene by a federal statute or who has a claim or defense that shares with the main action a common question of law or fact."

## DISCUSSION

### I.     Intervention as of Right

The Conservation Groups argue that they have satisfied each of the four requirements under Federal Rule of Civil Procedure 24(a)(2) to intervene as of right. While these factors are not "rigid, technical requirements," they are "intended to capture the circumstances in which the practical effect on the prospective intervenor justifies its participation in the litigation." *WildEarth Guardians*, 604 F.3d at 1198. The Court addresses each of these factors in turn.

A.     **Timeliness**

First, the Conservation Groups argue that the Motion to Intervene is timely. The timeliness requirement focuses in large part on prejudice to existing parties arising from the length of time between the initiation of the litigation and the motion to intervene. *See Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1250–51 (10th Cir. 2001). The Conservation Groups filed this Motion less than three weeks after the Department filed its Complaint, so argue that intervention at this early stage would not prejudice the existing parties. Petitioner makes no argument as to the timeliness of the Conservation Groups' Motion. In light of the early stage of the litigation and the lack of prejudice to the existing parties, the Court finds that the request for intervention is timely in satisfaction of Federal Rule of Civil Procedure 24(a).

B.     **Related Interest**

Second, the Conservation Groups allege that they have an interest related to the property or transaction that is the subject of the action. When litigation raises issues of significant public interest, rather than solely private rights, "the requirements for intervention may be relaxed." *San Juan Cty. v. United States*, 503 F.3d 1163, 1195 (10th Cir. 2007). The Conservation Groups note that the Tenth Circuit has also held that it is "'indisputable' that a prospective intervenor's environmental concern is a legally protectable interest." *WildEarth Guardians*, 604 F.3d at 1198 (citation omitted). The Conservation Groups argue that their persistent record of advocacy for the recovery of the Mexican gray wolf and additional wolf releases in New Mexico is a direct and substantial interest in ensuring that captive wolf releases go forward. As the Conservation Groups argue in their brief and numerous attached affidavits, the Groups' members have aesthetic and scientific interests in protecting the Mexican gray wolf and its habitat, and use public lands occupied by the Mexican gray wolf population for a wide range of activities. Thus,

their interests fit squarely within the Tenth Circuit's interest test for intervention right. Finally, the Groups themselves have organizational interests in ensuring that the United States Fish and Wildlife Service ("Service") has ultimate authority over endangered species recovery.

Petitioner makes no argument as to the Conservation Groups' interest. The Court finds that the Conservation Groups have satisfied the requirement that they claim an interest relating to the agency action which is the subject of the litigation, as the Groups have both individual member interests and organizational interests to ensure that captive wolf releases go forward and the recovery of the Mexican gray wolf continues.

### C. Protected Interest

Third, the Conservation Groups argue that they have satisfied that the litigation "may as a practical matter impair or impede the movant's ability to protect its interest." FED. R. CIV. P. 24(a)(2). If the Court grants Petitioner's remedy, the Conservation Groups argue that the requested remedy would immediately interfere with the Conservation Groups' interest in defending and protecting the release of wolves in New Mexico and also in protecting the Service's authority under the Endangered Species Act. Additionally, an adverse decision may interfere with the Groups' larger mission to preserve and protect endangered species elsewhere. As the Conservation Groups note, this impairment requirement presents only a "minimal burden" to prospective intervenors. *WildEarth Guardians*, 604 F.3d at 1199. Petitioner makes no argument as to the Conservation Groups' protected interest. The Court finds that the Conservation Groups have satisfied that the litigation may impair their ability to protect their interests in ensuring that captive wolf releases continue and other endangered species are protected.

### D. Adequate Representation

4

Fourth, the Conservation Groups argue that they have satisfied that the burden of showing that their interests are not adequately represented by the existing parties. In this case, the question hinges on whether the Service will adequately represent the Conservation Groups' interests.

At the outset, the parties dispute the burden that the Court should apply. Petitioner argues that the Court should "presume representation is adequate" in this case because the objectives of the Conservation Groups are identical to those of the Service in that both seek the release of wolves as the desired outcome. *Tri-State Generation & Transmission Ass'n. Inc. v. New Mexico Pub. Regulation Comm'n*, 787 F.3d 1068, 1070 (10th Cir. 2015). Thus, the Conservation Groups cannot overcome the presumption of adequate representation. The Conservation Groups argue that the Court should require a showing of a "minimal burden" that requires "only the possibility that representation may be inadequate." *WildEarth*, 604 F.3d at 1200.

The Conservation Groups note that they have already been granted the right to intervene as defendants in two cases challenging the Revised 10(j) Rule, as the Groups believe that the Rule does contain two limited provisions that offered modest progress toward recovery that they support. However, more generally, the Conservation Groups believe that the Revised 10(j) Rule falls far short of providing for recovery of the Mexican gray wolf population. *See New Mexico Off-Highway Vehicle Alliance v. United States Forest Serv.*, 540 Fed. App'x 877, 881 (10th Cir. 2013) (unpublished) (holding that proposed intervenors advocated for greater protections than the agency may have granted). The Conservation Groups conclude that similarly, even if the Service and the Groups currently have the same immediate goal to defeat the State's efforts regarding further wolf releases, there is no guarantee that the Service will maintain its policy or position during the course of litigation, nor a guarantee that the Groups' interests will align with

5

those of the Service for the purposes of remedy.

Petitioner likens this case to *San Juan County v. United States*, in which the county filed a quiet-title action against the National Park Service, asserting a right-of-way over a particular road. *See* 503 F.3d 1163, 1167 (10th Cir. 2007). When conservation groups sought to intervene, the Court concluded that because obtaining a quiet-title to the road was the single litigation objective, the intervenors could not overcome the presumption of adequate representation. *See id*. at 1207. Similarly, Petitioner argues that both the Conservations Groups and the Service have the same immediate goal and therefore cannot overcome a presumption of adequate representation, as there is no reason to believe that the Service will not adequately represent the interests of the Conservation Groups. Petitioner further argues that even though the Conservation Groups are challenging the Service's Revised 10(j) Rule in another forum, the Tenth Circuit in *San Juan County* held that representation was adequate despite the fact that the conservation groups and the National Park Service had "had their differences over the years" regarding the road at issue, explaining that an "earlier adverse relationship with the government does not automatically make for a present adverse relationship." 503 F.3d at 1206 (citations omitted). Additionally, Petitioner argues that even though the Conservation Groups are challenging the Revised 10(j) Rule in another forum, the Rule is not an issue in this case and is not before the Court. Finally, Petitioner argues that the Conservation Groups have not given the Court any reason to suggest that the Service will abandon their goals of releasing additional wolves. *See San Juan Cty.*, 503 F.3d at 1206. Thus, Petitioner concludes that the Conservation Groups are adequately represented by the Service and cannot satisfy the requirements of Rule 24(a) to intervene as of right.

The Conservation Groups counter that because the Revised 10(j) Rule authorizes the wolf

releases in New Mexico, the State's challenge to the Service's authority to release wolves in New Mexico necessarily challenges the Revised 10(j) Rule. Whether framed as a challenge to the implementation of the Rule, or a challenge to the Rule itself, the legality, context, and scope of the Rule will be an issue. The Conservation Groups continue that because they are currently challenging the Service's failure to comply with the Endangered Species Act, the Service cannot adequately represent their interests. Additionally, the past litigation and advocacy by the Conservation Groups bolsters the inadequacy of representation by the Service. The Conservation Groups argue that *San Juan County*, cited by Petitioner, differs because the intervenors were not involved in active, ongoing litigation over a key issue in the case, as the parties are here. Further, the Tenth Circuit differentiated *San Juan County* from circumstances like those in *Coalition of Arizona/New Mexico Ctys. v. Dept. of the Interior*, 100 F.3d 837, 845 (10th Cir. 1996), "in which the federal agency was defending a position that it had reluctantly adopted only as a result of litigation by the prospective intervenor." *San Juan Cty.*, 503 F.3d at 1206 (citations omitted). Similarly, the Conservation Groups argue that the Revised 10(j) Rule was promulgated over after litigation was brought by one of the conservation groups.

The Conservation Groups also take issue with Petitioner's assertion that they have identical objectives because the two parties share the same immediate goal: defeat of the State's efforts to halt wolf releases in New Mexico. The Conservation Groups instead argue that Petitioner again misplaces reliance on *San Juan County*, which is unique because it involved a Quiet Title Act dispute rather than a challenge to an administrative action. In *Kane Cty., Utah v. United States*, another Quiet Title Act dispute, the Tenth Circuit refused to rely on "inapplicable cases involving intervention in challenges to administrative action." 597 F.3d 1129, 1135 (10th Cir. 2010). The Conservation Groups argue that the reverse is also true and *San Juan County*

releases in New Mexico, the State's challenge to the Service's authority to release wolves in New Mexico necessarily challenges the Revised 10(j) Rule. Whether framed as a challenge to the implementation of the Rule, or a challenge to the Rule itself, the legality, context, and scope of the Rule will be an issue. The Conservation Groups continue that because they are currently challenging the Service's failure to comply with the Endangered Species Act, the Service cannot adequately represent their interests. Additionally, the past litigation and advocacy by the Conservation Groups bolsters the inadequacy of representation by the Service. The Conservation Groups argue that *San Juan County*, cited by Petitioner, differs because the intervenors were not involved in active, ongoing litigation over a key issue in the case, as the parties are here. Further, the Tenth Circuit differentiated *San Juan County* from circumstances like those in *Coalition of Arizona/New Mexico Ctys. v. Dept. of the Interior*, 100 F.3d 837, 845 (10th Cir. 1996), "in which the federal agency was defending a position that it had reluctantly adopted only as a result of litigation by the prospective intervenor." *San Juan Cty.*, 503 F.3d at 1206 (citations omitted). Similarly, the Conservation Groups argue that the Revised 10(j) Rule was promulgated over after litigation was brought by one of the conservation groups.

The Conservation Groups also take issue with Petitioner's assertion that they have identical objectives because the two parties share the same immediate goal: defeat of the State's efforts to halt wolf releases in New Mexico. The Conservation Groups instead argue that Petitioner again misplaces reliance on *San Juan County*, which is unique because it involved a Quiet Title Act dispute rather than a challenge to an administrative action. In *Kane Cty., Utah v. United States*, another Quiet Title Act dispute, the Tenth Circuit refused to rely on "inapplicable cases involving intervention in challenges to administrative action." 597 F.3d 1129, 1135 (10th Cir. 2010). The Conservation Groups argue that the reverse is also true and *San Juan County*

should be viewed as inapplicable in evaluating the adequacy of representation in a challenge to an administrative action such as in the instant case. The Conservation Groups conclude that because they and the Service have adverse litigation positions regarding the scope of the Revised 10(j) Rule, there is no guarantee that the Service will make all of the Conservation Groups' arguments or maintain its position. While they may share the immediate goal of defeating the State's attempt to exercise authority over the Service's wolf releases, this does not mean they are aligned with respect to the scope of the Service's obligations under the Endangered Species Act. Because the Conservation Groups have advocated for the Service to release more wolves in 2015 and 2016 than the Service had planned, the Groups argue that their positions regarding implementation of the Revised 10(j) Rule are not aligned. Finally, as the Service has taken no position on the Motion to Intervene, its "silence on any intent to defend the [intervenors'] special interests is deafening." *Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1256 (10th Cir. 2001).

The Court finds that the Conservation Groups have satisfied the burden of showing that their interests are not adequately represented by the existing parties. Initially, the Court finds that while the Department seeks a declaration that the Service must comply with the state permitting process, the legality, context, and scope of the Revised 10(j) Rule are at issue in this litigation. Indeed, the Department itself argued in its Reply brief (**Doc. 13**) regarding the Motion for Preliminary Injunction that they have challenged the Revised 10(j) Rule for purposes of final agency action. The Court finds that both the Service and the Conservation Groups seek to defeat the State's attempt to exercise authority over the Service's wolf releases. However, as evidenced by the Conservation Groups' litigation to force the Service to promulgate the Rule, and their current challenge of the Rule itself in another forum, the Court cannot assume that the Conservation Groups' interests wholly align with those of the Service. Thus, because the

objectives of the Conservation Groups are not necessarily identical to those of the Service, the Court finds that the appropriate burden is "a minimal burden on the environmental groups to show a possibility that neither of the parties will adequately represent their interests." *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1200 (10th Cir. 2010). The Tenth Circuit has repeatedly recognized that where a government agency is placed in the position of defending both public and private interests, the burden of showing inadequacy of the representation is satisfied. *See id.* The Conservation Groups have criticized the Service's promulgation of the Revised 10(j) Rule, believe the genetic crisis facing the Mexican gray wolf is the product of years of failure on the part of the Service, and advocated for the release of more wolves in 2015 and 2016 than the Service has called for. Thus, it is clear that the long-term interests of the Conservation Groups and the Service are not aligned, nor is it clear that the Service will make all of the Conservation Groups' argument in litigation. Further, there is no guarantee that the Service's policy will not shift during the course of the litigation. *See WildEarth Guardians v. United States Forest Serv.*, 573 F.3d 992, 997 (10th Cir. 2009). Finally, the Court notes that as the Service has taken no position on the Motion to Intervene, its silence on the intent to defend the Conservation Groups' interests is apparent. *See Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1256 (10th Cir. 2001). Accordingly, the Court finds that the Conservation Groups have met their minimal burden of showing that the Service may not adequately represent their interests.

### E.     The Court's Conclusion

The Court therefore finds that as the Conservation Groups have satisfied each of the four general requirements under Federal Rule of Civil Procedure 24(a)(2) to intervene as of right, the Court will permit the Conservation Groups to intervene as of right. Because the Court has found

that the Groups may intervene as of right, the Court does not address the Groups' arguments regarding permissive intervention.

## II. Limited Participation

Petitioner argues that if the Court grants the Conservation Groups' Motion to Intervene, the Groups' participation in the case should be limited such that they may only address the positions taken by the Department and the Service and shall not be allowed to bring affirmative claims, claims for attorney's fees, or file dispositive motions except by express leave of the Court. The Conservation Groups counter that such demands are premature, and the Groups anticipate working with all parties during the case management process to eliminate duplicative briefing and promote judicial efficiency. Additionally, the Conservation Groups note that they do not anticipate bringing affirmative claims or moving for attorney's fees. The Court agrees with the Conservation Groups that such a demand is premature and that the case management process is the appropriate forum to address such details. Thus, the Court declines at this time to limit the Conservation Groups' participation in the litigation although this particular issue can be revisited if necessary as this litigation proceeds.

## CONCLUSION

Accordingly, the Court finds that the Conservation Groups' Motion to Intervene on Behalf of Federal Defendants is well-taken, and therefore **GRANTED**. The parties are hereby instructed to include the intervening parties in the case caption in subsequent filings.

SO ORDERED

_____
UNITED STATES DISTRICT JUDGE